UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**MICHELE DERCOLE,**

        **Plaintiff,**

                                **Case No. 2:18-cv-12887**

     **v.**                        **Magistrate Judge Norah McCann King**

**ANDREW SAUL,**
**Commissioner of Social Security,**

        **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Michele Dercole for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On March 21, 2014, Plaintiff filed an application for benefits, alleging that she has been disabled since July 1, 2013. R. 199−204.[1] Plaintiff's application was denied initially and upon reconsideration. R. 107−11, 117−19. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 121−23. Administrative Law Judge Dennis O'Leary ("ALJ") held a hearing on

---

[1] In her brief to the Appeals Council dated March 20, 2018, Plaintiff advised that she intended to amend her onset date to the filing date of her application, March 21, 2014. R. 257.

May 18, 2017, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert. R. 47–78. In a decision dated July 3, 2017, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act since March 21, 2014, the date the application was filed. R. 10–21. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 20, 2018. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 6, 2019, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 24.[2] On March 12, 2020, the case was reassigned to the undersigned. ECF No. 38. The matter is now ripe for disposition.[3]

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

[3] On March 18, 2021, the Commissioner filed those portions of the administrative record that had been omitted from the original filing, ECF Nos. 42, 43, 44, in accordance with the Court's Orders. *See* Order, ECF No. 39, Order, ECF No. 40.

(1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*,
No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less
than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc.
Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018
WL 1509091, at *4.

   The substantial evidence standard is a deferential standard, and the ALJ's decision cannot
be set aside merely because the Court "acting de novo might have reached a different
conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli
v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported
by substantial evidence, we are bound by those findings, even if we would have decided the
factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,
2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or
substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d
1178, 1182 (3d Cir. 1992)).

   Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic
or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)
("The search for substantial evidence is thus a qualitative exercise without which our review of
social security disability cases ceases to be merely deferential and becomes instead a sham.");
*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,
2016).  The Court has a duty to "review the evidence in its totality" and "take into account
whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting
*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to

scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

## B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §

416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in

the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 46 years old on the date the application was filed. R. 20.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 21, 2014, the application date. R. 12.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: chronic obstructive pulmonary disease ("COPD"), depressive disorder, bipolar disorder, anxiety disorder, and substance abuse disorder. *Id*. The ALJ also found that Plaintiff's diagnosed impairments of hypothyroidism, obesity, and history of varicose veins and her alleged swollen feet were not severe. R. at 12–13.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 13–15.

At step four, the ALJ found that Plaintiff had the RFC to perform work at all exertional levels subject to various additional limitations. R. 15–20.

At step five, the ALJ found that a significant number of jobs—*i.e*., over 90,000 jobs as a ticket tagger; over 90,000 jobs as a garment folder; and over 100,000 jobs as a labeler—exist in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 21. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act since March 21, 2014, the date on which the application was filed. *Id*.

Plaintiff disagrees with the ALJ's findings at steps three, four, and five and asks that the

decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 32; *Plaintiff's Reply*, ECF No. 37. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 35.

## IV. DISCUSSION

### A. Treating Physicians

Plaintiff argues that the ALJ erred in discounting her treating sources, including "Drs. Schneck, Heimbach, Mr. Soffer and Physicians at Hackensack University Hospital[.]" *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 32, p. 12; *see also Plaintiff's Reply*, ECF No. 37, pp. 2–5, 9. This Court disagrees.

"'A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec*., 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec*., 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec*., 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v.*

*Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion

of a treating physician when it is unsupported and inconsistent with the other evidence in the

record."). "In choosing to reject the treating physician's assessment, an ALJ may not make

speculative inferences from medical reports and may reject a treating physician's opinion

outright only on the basis of contradictory medical evidence and not due to his or her own

credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation

marks and citations omitted). An ALJ must consider the following factors when deciding what

weight to accord the opinion of a treating physician: (1) the length of the treatment relationship

and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the

supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5)

the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. §

416.927(c)(1)–(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject

evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x

921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at

209–10 ("We have also held that although the government 'may properly accept some parts of

the medical evidence and reject other parts,' the government must 'provide some explanation for

a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno

v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a

treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may

choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot

reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the

reason why probative evidence has been rejected is required so that a reviewing court can

determine whether the reasons for rejection were improper.") (internal citation omitted).

### 1.  Dr. Sydney Heimbach, "Mr. Soffer," and "Physicians at Hackensack University Hospital"

Plaintiff asserts that the ALJ erred in "[d]iscrediting" treating sources, including Dr. Sydney Heimbach, "Mr. Soffer," and "Physicians at Hackensack University Hospital[.]" *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 32, p. 12. Plaintiff's argument is not well taken because she simply lists the names of these providers (and, for Dr. Hembach, only one portion of his treatment) without any explanation as to how the ALJ's alleged errors harmed her or affected the outcome of the case. *See id.*; *Plaintiff's Reply*, ECF No. 37, p. 9. For example, Plaintiff generally complains that the ALJ improperly discredited "Physicians at Hackensack University Hospital[,]" but does not even identify any particular individuals or opinions, nor does she explain how the ALJ erred or how any alleged error adversely affected the outcome of the case. *See generally Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 32; *Plaintiff's Reply*, ECF No. 37. The Court will not hunt through the record and guess which physicians to whom Plaintiff intends to refer. *Cf. Atkins v. Comm'r Soc. Sec.*, 810 F. App'x 122, 129 (3d Cir. 2020) ("'[J]udges are not like pigs, hunting for truffles buried in the record.'") (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)) (internal citation omitted)); *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments.").

Plaintiff also complains that the ALJ erred in discrediting a "Mr. Soffer," identifying this person only as Plaintiff's "psychotherapist for several years." *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 32, p. 10.[4] Again, however, Plaintiff points to no findings or opinions of "Mr.

---

[4] It is not clear from Plaintiff's briefs what the credentials of this person might be.

Soffer" that the ALJ allegedly improperly evaluated. *See generally id.*; *Plaintiff's Reply*, ECF No. 37; *see also Atkins*, 810 F. App'x at 129; *Claxton*, 766 F.3d at 307.

Similarly unavailing is Plaintiff's assertion that that the ALJ erred in discrediting Dr. Heimlich, but Plaintiff supports this assertion only with the representation that this doctor discontinued a medication, Seroquel. *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 32, pp. 5, 12; *see also Plaintiff's Reply*, ECF No. 37, p. 9. Plaintiff's references to Dr. Heimlach are unaccompanied by a description of any opinion articulated by this doctor, or by an explanation as to how the ALJ erred in relation to Dr. Heimlach or how any such error warrants remand. *See id.* The Court will not construct Plaintiff's arguments for her. *See Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than thrown down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments.").

For these reasons, Plaintiff's undeveloped assertions regarding unidentified "Physicians at Hackensack University Hospital," Mr. Soffer, and Dr. Heimlach therefore will not serve as a basis for remand. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *cf. Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (finding that "a remand is not required here because it would not affect the outcome of the case").

2. **Paul E. Schneck, M.D.**

Plaintiff also argues that the ALJ erred in "[d]iscrediting" Paul E. Schneck, M.D., her

treating psychiatrist. *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 32, p. 12; *Plaintiff's*

*Reply*, ECF No. 37, pp. 2–5, 9. Plaintiff's arguments are not well taken.

Dr. Schneck began treating Plaintiff in August 2011. R. 387. On January 19, 2017, Dr.

Schneck completed a one-page, fill-in-the blank examination report in which he diagnosed major

depressive disorder beginning in 2006. R. 479. Dr. Schneck noted that Plaintiff had been treated

on a monthly basis, with a current treatment regimen of medication and supportive therapy. *Id.* In

response to the question whether the patient required behavioral health/substance abuse

treatment and whether any of the patient's diagnoses limit her ability to participate in gainful

employment and/or occupational training, Dr. Schneck checked the boxes marked "Yes" to both

questions. *Id.* When asked to explain those answers, Dr. Schneck responded: "Panic attacks,

severe anxiety, inattention, unable to sit or stand long periods, depressed mood[,] Fatigue[.]" *Id.*

In response to the question whether Plaintiff is able to engage in any gainful employment and/or

occupational training of any kind, Dr. Schneck checked the box marked "No[,]" noting that he

expected that Plaintiff would be able to engage in gainful employment and/or occupational

training by March 1, 2018, "or permanent[.]" *Id.*

Dr. Schneck also prepared a letter dated May 1, 2017, stating and opining as follows:

Michelle Dercole is a patient in treatment at Vantage Health System. She suffers
from a disabling Psychiatric Disorder that makes her unable to work. She has
symptoms of intense depression and anxiety. She suffers from fatigue,
forgetfulness, low motivation, decreased initiative. She is unable to perform
minimal required vocational activities.

In my professional opinion her psychiatric illness causes complete vocational and
industrial disability.

12

R. 688. Dr. Schneck signed the letter, identifying himself as Diplomate, American Board of

Psychiatry and Neurology (P). *Id.*

The ALJ considered Dr. Schneck's opinions but assigned them "little weight," reasoning

as follows:

> In an examination report from Dr. Schneck at Vantage, dated January 19, 2017, the claimant was noted to be treated on a monthly basis through medication and through supportive therapy. He stated that the claimant required behavioral health/substance abuse treatment. He opined that the claimant's impairments limited her from participating in gainful employment and/or occupational training. He stated that the claimant suffered from panic attacks, severe anxiety, inattention, and was unable to sit or stand long periods, and had a depressed mood and fatigue (exhibit 7F, p. 3).
>
> Dr. Schneck also submitted a letter on May 1, 2017. He stated that the claimant suffered from a disabling psychiatric disorder that makes her unable to work. He noted that she had symptoms of intense depression and anxiety, that she suffered from fatigue, forgetfulness, low motivation and decreased initiative. He found that the claimant was unable to perform minimal required vocational activities. He stated that in his professional opinion, the claimant's psychiatric illnesses cause complete vocational and industrial disability (exhibit 16F, p. 1).
>
> I give Dr. Schneck's opinions little weight. Dr. Schneck is a treating source. However, he did not opine any non-exertional limitations due to the claimant's impairments. Rather, he provided a conclusory opinion about the claimant's ability to work. Determinations of disability are reserved for the Commissioner, not for Dr. Schneck. For these reasons, I give Dr. Schneck's opinions little weight.

R. 18. The Court finds no error in the ALJ's decision to assign little weight to these opinions. *See*

*Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 118 (3d Cir. 2020) ("Whether or not Louis can

perform occupational duties is a legal determination reserved for the Commissioner.") (citing 20

C.F.R. § 404.1527(d)); *Kerdman v. Comm'r of Soc. Sec.*, 607 F. App'x 141, 144 (3d Cir. 2015)

("[S]ubstantial evidence supports the ALJ's conclusion that Dr. Frank's opinion was not well-

supported, as Dr. Frank failed to reference any objective medical evidence supporting his

statements of disability or articulate any specific functional limitations suffered by [the

claimant]."); *Zonak v. Comm'r of Soc. Sec.*, 290 F. App'x 493, 497 (3d Cir. 2008) ("[T]he ALJ

was not obligated to give significant weight to Dr. Kumar's opinion as to Zonak's ability to work because the opinion related to the ultimate issue of disability—an issue reserved exclusively to the Commissioner."); *Dixon v. Comm'r of Soc. Sec.*, 183 F. App'x 248, 252 (3d Cir. 2006) ("The treating professionals' opinions stated that Dixon was disabled and unable to do the specific jobs identified by the vocational expert. Because the opinions reflected the treating professionals' opinions on disability, they were properly afforded no special significance.") (citing 20 C.F.R. § 404.1527(e)(1) & (3)); *Dennis-Orshak v. Berryhill*, No. 3:18-CV-15987, 2020 WL 4364330, at *5 (D.N.J. July 30, 2020) ("First, the ALJ properly gave no weight to Dr. Cohen's opinion that Dennis-Orshak 'could never return to full time work' because that is a determination reserved to the Commissioner.") (citations omitted); *cf. Galette v. Comm'r Soc. Sec.*, 708 F. App'x 88, 91 (3d Cir. 2017) ("As we have explained, forms that 'require[ ] the physician only to check boxes and briefly to fill in blanks . . . are weak evidence at best.'") (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)).

Plaintiff challenges this evaluation, arguing first that the ALJ mischaracterized "as solely substance abuse" Plaintiff's "numerous psychiatric ER and hospital visits for major depression, anxiety disorder and drug and/or alcohol overdose with suicide attempts suspected and never ruled out." *Plaintiff's Reply*, ECF No. 37, pp. 2–3. Plaintiff's argument is not well taken. As an initial matter, Plaintiff's assertion does not address the ALJ's consideration of Dr. Schneck's opinions and the ALJ's reasons for discounting those opinions described above. R. 18. Moreover, the ALJ did not mischaracterize Plaintiff's hospitalizations. *See* R. 17 ("Treatment notes show that the claimant *was hospitalized at several points for her mental impairments around and after the application date.*") (emphasis added); *see also* R. 19 (finding that additional non-exertional restrictions in the RFC are warranted "*especially in light of the claimant's*

14

*multiple hospitalizations*") (emphasis added).

Plaintiff goes on to contend that the "ALJ cited to no medical/psychological sources who rebutted any of the psychiatric findings, signs and symptoms in record," complaining that the ALJ instead gave "partial credit" to the non-examining, reviewing state agency physicians whose review of the record preceded "the weight of the medical evidence[.]" *Plaintiff's Reply*, ECF No. 37, pp. 3–4. Plaintiff specifically complains that the ALJ assigned more weight to state agency physician Dr. Castillo-Velez even though she reviewed the record only in December 2014, which predated "the weight of the medical evidence[.]" *Id*. at 4. [5] Plaintiff's arguments are not well taken. First, Plaintiff cites to no authority that the ALJ must cite to other medical or psychological sources when discounting Dr. Schneck's conclusory opinions that do not identify any non-exertional limitations due to Plaintiff's impairments or his opinions on matters that are reserved to the Commissioner. *See id.*; *see also Louis*, 808 F. App'x at 118; *Kerdman*, 607 F.

---

[5] The ALJ assigned "some weight" to Dr. Castillo-Velez, a state agency physician who reviewed the record in December 2014, as follows:

> Dr. Castillo-Velez, a doctor hired by the state agency, also reviewed the record on December 17, 2014. She opined that the claimant had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation, each of extended duration (exhibit 4A, p. 12-13). Dr. Castillo-Velez opined that the claimant could maintain concentration, persistence or pace for simple tasks (exhibit 4A, p. 17).

> I give Dr. Castillo-Velez's opinions some weight. Dr. Castillo-Velez's opinions are consistent with the treatment notes above, which show that the claimant has moderate limitations in concentration, persistence or pace. However, the record shows that the claimant warrants additional non-exertional limitations, especially in light of the claimant's multiple hospitalizations. For these reasons, I give Dr. Castillo-Velez's opinions some weight.

R. 18–19.

App'x at 144; *Zonak*, 290 F. App'x at 497; *Dixon*, 183 F. App'x at 252; *Galette*, 708 F. App'x at

91. In addition, it is not apparent how Plaintiff's complaint that Dr. Castillo-Velez's opinion was

rendered without the benefit of "the weight of the medical evidence" and "failed to account for

significant evidence in the record[,]" *Plaintiff's Reply*, ECF No. 37, p. 4, establishes that the ALJ

erred in discounting Dr. Schneck's conclusory opinions and opinions on matters reserved to the

Commissioner. *Id*. In any event, an ALJ may rely on a state agency expert's opinion even when

additional medical evidence is later submitted. *See Chandler v. Comm'r of Soc. Sec*., 667 F.3d

356, 361 (3d Cir. 2012) ("The Social Security regulations impose no limit on how much time

may pass between a report and the ALJ's decision in reliance on it. Only where 'additional

medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency

medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any

impairment in the Listing,' is an update to the report required.") (emphasis in original) (citations

omitted); *Wilson v. Astrue*, 331 F. App'x 917, 919 (3d Cir. 2009) ("Generally, an ALJ is required

to consider the reports of State agency medical consultants; however, there is no requirement that

an ALJ must always receive an updated report from the State medical experts whenever new

medical evidence is available."). Here, Plaintiff fails to explain how any specific evidence post-

dating Dr. Castillo-Velez's opinion establishes that the ALJ erred in his evaluation of that

opinion or the medical opinions of Dr. Schneck. *See Plaintiff's Reply*, ECF No. 37, pp. 2–5.

Plaintiff next argues that the ALJ improperly failed to explain his evaluation of Dr.

Schneck's opinion, apparently contending that the ALJ did not consider the relevant factors

required by 20 C.F.R. § 416.927(c). *Id.* at 5. This Court disagrees. As a preliminary matter, "[a]n

ALJ need not explicitly discuss each factor in his [or her] decision." *O'Neill v. Comm'r of Soc.

Sec.*, No. CV 18-0698, 2019 WL 413539, at \*6 (D.N.J. Jan. 31, 2019); *Samah v. Comm'r of Soc.

16

*Sec.*, No. CV 17-08592, 2018 WL 6178862, at *5 (D.N.J. Nov. 27, 2018) (same) (collecting cases). "Instead, an ALJ need only 'explain his [or her] evaluation of the medical evidence for the district court to meaningfully review whether his [or her] reasoning accords with the regulation's standards.'" *Samah*, 2018 WL 6178862, at *5 (quoting *Laverde v. Colvin*, No. 14-cv-1242, 2015 WL 5559984, at *6 n.3 (W.D. Pa. Sept. 21, 2015)); *see also Jones*, 364 F.3d at 505 (stating that the ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis" and instead must only "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review"); *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) ("Although the ALJ did not specifically identify each factor [under 20 C.F.R. § 404.1527(c)], all relevant factors were considered throughout the lengthy, detailed opinion.") (citations omitted). The ALJ did just that in this case. Although the ALJ did not explicitly conduct a factor-by-factor analysis, he specifically considered, when explaining the weight assigned to Dr. Schneck's opinions, the doctor's examinations of Plaintiff and treatment regimen and also considered Dr. Schneck's treating relationship with Plaintiff. *See* R. 18; 20 C.F.R. § 416.927(c)(1), (2). The ALJ also explicitly considered Dr. Schneck's May 1, 2017 letter, which identified Dr. Schneck's specialty. R. 688 (identifying Dr. Schneck as a Diplomate, American Board of Psychiatry and Neurology); *see also* 20 C.F.R. § 416.927(c)(5). In addition, as detailed above, the ALJ explained that he discounted Dr. Schneck's opinions because they did not identify any non-exertional limitations due to Plaintiff's impairments, they were conclusory, and they addressed matters reserved to the Commissioner. R. 18; *see also* 20 C.F.R. § 416.927(c)(3), (6). This explanation is sufficient to permit meaningful review and persuades this Court that substantial evidence supports the ALJ's evaluation of Dr. Schneck's opinions.

17

### B.  Step Three

Plaintiff next complains that the ALJ's analysis at step three of the sequential evaluation process is flawed because it did not consider all the medical evidence, nor did it consider the combination of all of Plaintiff's impairments. *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 32, pp. 12–17. Plaintiff specifically complains that the ALJ erred in failing to find that she met or medically equaled Listings 3.00, 3.02, 12.04, and 12.06 and in failing to mention Listing 12.08. *Id.*

At step three, an ALJ considers whether the combination of the claimant's medically determinable impairments meets or equals the severity of any one of the impairments in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Zebley*, at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular language" when determining whether a claimant meets a listing, the ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120). Accordingly, if the ALJ's decision, "read as a whole, illustrates that the ALJ

considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id.*

### 1.    Listings 3.00 and 3.02

Plaintiff contends that the ALJ erred in finding that she did not meet or medically equal Listing 3.00, which addresses respiratory disorders, and Listing 3.02, which addresses chronic respiratory disorders. *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 32, pp. 12, 16. Plaintiff's argument is not well taken.

The ALJ determined at step three that Plaintiff did not meet or medically equal Listings 3.00 and 3.02, reasoning as follows:

> The record fails to establish that the claimant has any other physical impairment or combination of impairments that meets or medically equals the criteria of any listed impairment. The medical evidence of record does not document signs, symptoms, or laboratory findings indicating any impairment or combination of impairments severe enough to meet the criteria of any listed impairment. No treating, examining, or non-examining medical source has mentioned findings or rendered an opinion that the claimant's impairments, singly or in combination, medically equaled the criteria of any listed impairment. Specific consideration has been given to the applicable listing in section 3.00 Respiratory Disorders. The claimant's COPD has been considered under listing 3.02 Chronic Respiratory Disorders. However, as will be discussed in further detail below, the record does not contain sufficient evidence to establish the criteria under sections A, B, C or D of this listing. This impairment does not satisfy the criteria under the relevant listing.

R. 13; *see also* R. 17 ("Her COPD was noted to be stable on medication or improving (exhibit 6F, p. 2, 4)."). The Court finds no error with the ALJ's consideration in this regard. *See Jones*, 364 F.3d at 505 (stating that "ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [Plaintiff] did not meet the requirements for any listing").

Plaintiff asserts that the ALJ erred in not finding that she meets or medically equals Listings 3.00 and 3.02, but refers only in passing to these Listings and does not develop any argument in support of her assertion. *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 32, pp. 12, 16. Plaintiff, who bears the burden at step three, makes no attempt to explain how her impairments met or medically equaled Listings 3.00 or 3.02. *See generally id.*; *see also Burnett*, 220 F.3d at 120 n.2 (stating that "the burden is on the claimant to present medical findings that show his or her impairment matches a listing or is equal in severity to a listed impairment"); *cf. Cosby v. Comm'r of Soc. Sec.*, 231 F. App'x 140, 146 (3d Cir. 2007) (finding it significant that the claimant did "not argue or even suggest which listing the ALJ should have applied" or "point to any medical evidence ignored by the ALJ that would show that [her] impairments medically equaled one of the listings"). As previously discussed, the Court will not construct arguments for Plaintiff or scour the record. *See Atkins*, 810 F. App'x at 129; *Claxton*, 766 F.3d at 307; *Padgett*, 2018 WL 1399307, at *2. Plaintiff's undeveloped and unsupported arguments regarding an alleged error at step three as to Listings 3.00 and 3.02 therefore will not serve as a basis for remand. *See Shinseki*, 556 U.S. at 409–10.

### 2.    Listings 12.04, 12.06, and 12.08

Plaintiff next challenges the ALJ's findings regarding her mental impairments at step three, arguing that the ALJ erred in concluding that her mental impairments did not meet or medically equal Listings 12.04 or 12.06, and that the ALJ erred in failing to consider Listing 12.08. *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 32, pp. 12–16. Plaintiff's arguments are not well taken.

Listing 12.04 addresses depressive, bipolar, and related disorders, while Listing 12.06 addresses anxiety related disorders. 20 C.F.R. Pt. 404, Subpt. P., App. 1, §§ 12.04, 12.06 (2017).

To meet Listing 12.04 or 12.06, a claimant must meet the Listing's paragraph A criteria and, in addition, the criteria of either paragraph B or paragraph C. *Id*. The paragraph B criteria are met when a claimant has an extreme limitation of one, or a marked limitation of two,[6] of the following four mental functional areas: the ability to understand, remember, or apply information; the ability to interact with others; the ability to concentrate, persist, or maintain pace; and the ability to adapt or manage oneself. *Id*. The paragraph C criteria are met if the claimant's mental disorder is "serious and persistent[,]" *i.e.*, the claimant has a medically documented history of the existence of the disorder over a period of at least two years and there is evidence of both of the following: (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the claimant's mental disorder; and (2) marginal adjustment, *i.e.*, the claimant has minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of his or her daily life. *Id*.

Here, at step two, the ALJ determined that Plaintiff suffered the severe mental impairments of depressive disorder, bipolar disorder, and anxiety disorder. R. 12. The ALJ determined at step three that Plaintiff's mental impairments, whether considered singly or in combination, did not meet or medically equal the criteria of Listing 12.04 or 12.06. R. 13–15. In finding that Plaintiff's impairments did not meet the paragraph B criteria, the ALJ concluded that Plaintiff had moderate limitations in the areas of understanding, remembering, or applying

---

[6] A "marked" limitation means that the claimant is seriously limited in her ability to function independently, appropriately, effectively and on a sustained basis in a specified area. *Id*. An "extreme" limitation means that the claimant is unable to function independently, appropriately, effectively on a sustained basis in a specified area. *Id*. A "moderate" limitation means that the claimant has a fair ability to function independently, appropriately, effectively, and on a sustained basis in a specified area. *Id*.

information; concentrating, persisting, or maintaining pace; and adapting or managing oneself;

and only a mild limitation in the area of interacting with others, reasoning as follows:

> In understanding, remembering, or applying information, the claimant has moderate limitations. In her adult function report, dated July 14, 2014, the claimant stated that she has difficulty with memory and with following instructions. The claimant stated that she could not follow written instructions "at all," but that she could follow spoken instructions "better than written" (exhibit 5E, p. 6). In testimony, the claimant stated that due to her impairments, she also stated that she gets confused, cannot focus and forgets. She also would forget what she was doing (testimony). Treatment notes show that the claimant's memory and concentration were good (exhibit 9F, p. 4, 11). However, one treatment note showed that the claimant had a "low average intellect" (exhibit 1 1F, p. 4). Overall, the record shows that the claimant has moderate limitations in understanding, remembering or applying information.

> In interacting with others, the claimant has mild limitations. In her adult function report, the claimant stated that she still spends time with others, talking on the phone, although she stated that she does not go anywhere on a regular basis due to her mental impairments. However, she also stated that she does not have any problem getting along with family, friends, neighbors or others (exhibit 5E, p. 5). While some treatment notes showed that the claimant was irritable, various other treatment notes show that the claimant was not irritable or cranky (exhibits 9F, p. 3, 10; 10F, p. 8, 12, 14, 16). Overall, the record shows that the claimant has mild difficulties in interacting with others.

> With regard to concentrating, persisting, or maintaining pace, the claimant has moderate limitations. In her adult function report, the claimant stated that she had trouble with concentration and with completing tasks. Specifically, she stated that she could not finish what she starts, and that she could pay attention for 10 minutes (exhibit 5E p. 6). Various treatment notes in the record show that the claimant's memory and concentration were good, although some notes indicate that the claimant reported difficulty in concentration and some notes indicate that the claimant's concentration was fair (exhibits 9F, p. 4, 11; 11F, p. 3; 13F, p. 2). Overall, the record shows that the claimant has moderate difficulties with regard to concentrating, persisting or maintaining pace.

> As for adapting or managing oneself, the claimant has experienced moderate limitations. In her adult function report, the claimant stated that she could not handle stress at all, and that she could not handle changes in her routine at all, although she stated that she has no routine except for her nebulizer and her medications (exhibit 5E, p. 7). In the mental status examinations, the claimant's insight and judgment were considered to be either fair, impaired, or poor (exhibits 9F, p. 4; 11F, p. 2, 4; 12F, p. 7; 13F, p. 2). Overall, the record shows that the claimant has moderate limitations with regard to adapting or managing herself.

R. 14. The ALJ went on to find that Plaintiff's impairments also did not meet the paragraph C

criteria, reasoning as follows:

> I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life. The evidence fails to establish that the claimant has not suffered from repeated episodes of decompensation, each of extended duration. Further, she has not demonstrated that her conditions are such that even a minimal increase in mental demands or change in the environment would cause her to decompensate. Finally, the record does not establish that the claimant has an inability to function outside of a highly supportive living arrangement of more than one year, and her conditions do not indicate that she would require such an arrangement. Therefore, the claimant does not meet the criteria of paragraph C.

R. 15. The Court finds no error with the ALJ's reasoning in this regard and finds that substantial

evidence supports the ALJ's determination at step three as to Listings 12.04 and 12.06.

As with Listings 3.00 and 3.02, Plaintiff simply asserts that the ALJ erred in his

consideration of Listings 12.04 and 12.06 unaccompanied by any argument or citation to the

record. *See generally Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 32. For the reasons

previously discussed, Plaintiff bears the burden at step three, *Burnett*, 220 F.3d at 120 n.2, and,

therefore, Plaintiff's undeveloped and unsupported arguments will not serve as a basis to remand

this action. *See Shinseki*, 556 U.S. at 409–10; *Atkins*, 810 F. App'x at 129; *Claxton*, 766 F.3d at

307; *Padgett*, 2018 WL 1399307, at *2.

In addition, to the extent that Plaintiff intends to challenge the ALJ's failure to address

the paragraph A criteria of Listings 12.04 and 12.06, *Plaintiff's Brief Pursuant to Local Rule 9.1*,

ECF No. 32, p. 13, Plaintiff's challenge is unavailing. As set forth above, a claimant must satisfy

the criteria of *both* paragraphs A and B or criteria of *both* paragraphs A and C of Listings 12.04

and 12.06. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06 (2017). Here, the ALJ fully

analyzed whether Plaintiff met the criteria for paragraphs B and C. R. 13–15. Once the ALJ determined that Plaintiff did not satisfy the criteria for either paragraph B or paragraph C, there was no reason for him to expressly consider the paragraph A criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06 (2017); *cf. Lewis v. Comm'r of Soc. Sec.*, No. 15CV06275, 2017 WL 6329703, at *8 (D.N.J. Dec. 11, 2017) ("In reviewing a case, 20 C.F.R. Part.404, Subpart P indicates that a claimant must prove both Paragraph A and B criteria. The ALJ simply chose to proceed with a full analysis of Paragraph B, and, upon determining that Paragraph B was not satisfied, chose not to address Paragraph A as there would be no point given that the criteria for Paragraph B had already failed."). Accordingly, the ALJ's failure to explicitly consider the criteria of paragraph A of Listings 12.04 and 12.06 does not warrant remand.

Plaintiff also contends that the ALJ erred in failing to consider whether her mental impairments meet or medically equal Listing 12.08. *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 32, pp. 13–16. Plaintiff's argument is not well taken. Listing 12.08, which addresses personality and impulse-control disorders, requires that a claimant's impairments satisfy the criteria of both paragraphs A and B. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.08 (2017). Paragraph B of Listings 12.04 and 12.06 are identical to Paragraph B in Listing 12.08. *Compare id.* at §§ 12.04 and 12.06 *with id.* at § 12.08. The ALJ's analysis of the criteria of paragraph B in Listings 12.04 and 12.06 would therefore apply equally to an analysis of those paragraphs in Listing 12.08. *Id.*; *cf. Thomas v. Comm'r of Soc. Sec.*, No. 2:14-0627, 2015 WL 5921515, at *6–7 (D.N.J. Oct. 9, 2015) (noting that the criteria of paragraphs B and C of Listings 12.03 and 12.04 are identical and that "[t]he ALJ's finding that the criteria of Listing 12.04 were not satisfied would necessitate a similar finding as to Listing 12.03"); *Kerdman v. Colvin*, No. CIV.A. 13-04216, 2014 WL 3783872, at *9 (D.N.J. July 30, 2014), *aff'd sub nom.*, 607 F. App'x

141 (3d Cir. 2015) ("As the analysis under Listing 12.04 or 12.06 is exactly the same, the ALJ's ultimate determination of Kerdman's mental impairments would be the same under either listing. Thus, Kerdman's contention that ALJ Krappa failed to analyze her anxiety under Listing 12.06 is an insufficient basis for reversal.").

Plaintiff nevertheless challenges the ALJ's findings under the paragraph B criteria, *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 32, p. 15, Plaintiff's challenges are unavailing. As a preliminary matter, Plaintiff provides no citation to the record to support her factual assertions in connection with the paragraph B criteria. *See id.* As previously noted, Plaintiff bears the burden at step three and the Court will not scour the record for evidence to support Plaintiff's arguments. *See Atkins*, 810 F. App'x at 129; *Claxton*, 766 F.3d at 307; *Burnett*, 220 F.3d at 120 n.2. Notably, even if the Court overlooked the failure to provide citations to the record, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)).

In addition, although Plaintiff contends that she has a "marked" limitation in the area of understanding, remembering, or applying information, she does not identify or explain the degree of any limitations, *i.e.*, extreme, marked, etc., in the remaining areas of functioning, *i.e.,* interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *See Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 32, p. 15. Accordingly, Plaintiff has not shown, or even argued, that she has at least one extreme limitation or two marked limitations in the four areas of functioning required to satisfy the paragraph B criteria. *Id.* Accordingly, any error made by the ALJ in failing to address the criteria of Listing 12.08 in

addition to those of Listings 12.04 and 12.06 was harmless. *See Jones*, 364 F.3d at 505; *Thomas*,

2015 WL 5921515, at *6–7; *Kerdman*, 2014 WL 3783872. For all these reasons, then, Plaintiff

has not established that she is entitled to remand on this basis. *See Shinseki* 556 U.S. at 409–10.

### 3.    Considering impairments in combination

Plaintiff also contends that the ALJ erred in failing to consider all her impairments in

combination at step three. *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 32, pp. 16–17.

This Court disagrees. At step three, the ALJ found as follows:

> The record fails to establish that the claimant has any other physical impairment *or*
> *combination of impairments* that meets or medically equals the criteria of any listed
> impairment. The medical evidence of record does not document signs, symptoms,
> or laboratory findings indicating any impairment *or combination of impairments*
> severe enough to meet the criteria of any listed impairment. No treating, examining,
> or non-examining medical source has mentioned findings or rendered an opinion
> that the claimant's impairments, singly *or in combination*, medically equaled the
> criteria of any listed impairment.

R. 13 (emphasis added); *see also id.* ("The severity of the claimant's mental impairments,

considered singly and *in combination*, do not meet or medically equal the criteria of listings

12.04 and 12.06.") (emphasis added). Thus, the ALJ explicitly stated that he considered

Plaintiff's impairments in combination. *See id.* "An ALJ fulfills his obligation to consider a

claimant's impairments in combination with one another if the ALJ explicitly indicates that he

has done so and there is 'no reason not to believe him.'" *Granados v. Comm'r of Soc. Sec.*

*Admin.*, No. 13-0781, 2014 WL 60054, at *9 (D.N.J. Jan. 7, 2014) (quoting *Morrison ex rel.*

*Morrison v. Comm'r of Soc. Sec. Admin.*, 268 F. App'x 186, 189 (3d Cir. 2008)); *Gainey v.*

*Astrue*, No. 10-1912, 2011 WL 1560865, at *12 (D.N.J. Apr. 25, 2011) ("[W]here the ALJ has

indicated that the impairments have been considered in combination, there is 'no reason not to

believe' that the ALJ did so.") (quoting *Morrison ex. rel. Morrison*, 268 F. App'x at 189).[7]

Accordingly, Plaintiff has not shown that she is entitled to remand on this basis.

    **C.**    **Subjective Complaints**

    Plaintiff argues that the ALJ failed to properly evaluate her complaints of pain, which she

contends are supported by the medical record. *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF

No. 32, pp. 17–18; *Plaintiff's Reply*, ECF No. 37, pp. 6–9. This Court disagrees.

    "Subjective allegations of pain or other symptoms cannot alone establish a disability."

*Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. §

416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective

complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20

C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a

claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the

ALJ "must consider whether there is an underlying medically determinable physical or mental

impairment(s) that could reasonably be expected to produce an individual's symptoms, such as

pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably

be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the

intensity and persistence of those symptoms to determine the extent to which the symptoms limit

an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181

---

[7] Plaintiff further argues that the ALJ "failed to discuss or evaluate her diagnosed personality disorder" and failed to discuss all her individual and combined impairments "in evaluating Steps 2-5" of the sequential evaluation, including her pain, depression, anxiety, and "hospitalization with attempted suicide and acting-out by overdose and side effects of medication." *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 32, p. 16. Plaintiff is mistaken. The ALJ expressly considered these matters at step four. R. 15–20; *see also Jones*, 364 F.3d at 505 (reading ALJ's decision as a whole to find "sufficient explanation to provide meaningful review of the step three determination").

F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In this evaluation, an ALJ considers objective medical evidence as well as other evidence relevant to a claimant's symptoms. 20 C.F.R. § 416.929(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms).

Finally, "[t]he ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[8]

Here, the ALJ followed this two-step evaluation process. The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause

---

[8]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility." SSR 16-3p. However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 16. The ALJ went on to explain as follows:

> I do not find the claimant's statements to be fully consistent with the medical evidence of the record because it is not supported by the record. In her testimony, the claimant stated that she could not work due to her inability to sit or stand too long due to varicose veins and due to an inability to focus or concentrate. She also stated that she has had extreme memory loss and that she had hallucinations. However, the record does not support this. There are no notes showing that she had varicose veins that caused her difficulty with sitting or standing. The record also does not contain evidence from mental status examinations showing that the claimant had a significantly reduced memory or attention and concentration, or that she had hallucinations of any kind. Because the medical evidence of the record does not support the claimant's allegations of disability, I do not find the claimant's statements to be wholly consistent with the medical evidence of the record.

> I also do not find the claimant's statements to be fully consistent with the medical evidence of the record because there were no medical opinions in the record from any treating sources who opined that the claimant had any exertional or non-exertional limitations caused by her physical and mental impairments that would support a finding of "disabled." The record does not contain any opinions from any treating sources who opine any physical or mental limitations for the claimant. While Dr. Schneck submitted opinions twice, he did not opine any non-exertional mental limitations for the claimant. Rather, he provided conclusory opinions about the claimant's ability to work. Because the record lacks corroborating opinions that support the claimant's allegations of her exertional and non-exertional limitations that are caused by her impairments, I do not find the claimant's statements to be fully consistent with the medical evidence of the record.

R. 19–20. The ALJ also detailed years of record evidence, reflecting, *inter alia*, no complaints of shortness of breath in office visits; respiratory symptoms relieved with treatment; physical examinations that revealed Plaintiff's lungs were clear to auscultation and percussion with good respiratory effort and two notes that reflected only mild wheezing; normal physical examinations with only one note showing 1+ right lower extremity edema; no indication that Plaintiff's fatigue hindered her in any way; notations that Plaintiff's COPD was stable on medication or improving;

29

treatment notes that revealed that Plaintiff had no hallucinations, no paranoia, and no thought process disorders; treatment notes from 2016 and 2017 that noted only occasional episodes of panic; notations that Plaintiff denied suicidal ideation and delusions, despite hospitalization at several points for her mental impairments around and after the application date; treatment notes that reflect that Plaintiff's anxiety and depression were controlled with medication and, with one exception where she had abused Xanax, she had good medication compliance; notations that, although Plaintiff's insight and judgment were considered to be either fair, impaired, or poor, her memory and concentration were good or fair; and the absence in the record of any opinion regarding Plaintiff's exertional or non-exertional limitations due to her physical and mental impairments. R. 15–18. The Court finds that the ALJ sufficiently explained his reasoning when assessing Plaintiff's subjective complaints, which is supported by substantial evidence in the record. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134.

Plaintiff, nevertheless, challenges the ALJ's evaluation in this regard, arguing that the ALJ "disregarded" her testimony as well as "the objective findings and opinions of treating sources, including Dr. Schneck, without explanation (Tr. 18-20)." *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 32, p. 18; *see also Plaintiff's Reply*, ECF No. 37, p. 7. This Court disagrees. The ALJ expressly considered Plaintiff's testimony. R. 16. In addition, as explained earlier in this Opinion and Order, the ALJ explicitly and sufficiently explained his reasons for discounting Dr. Schneck's opinions. R. 18.

Plaintiff also insists that "[t]reatment records from Dr. Schneck and from several of her hospitalizations support these complaints (Tr. 380-428, 477-481, 539-569, 688)." *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 32, p. 18. However, this assertion is unavailing because Plaintiff does not explain how these multiple pages of the record purportedly support her

subjective complaints and undermine the ALJ's consideration of such complaints. *See id.*; *see also Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments."). In any event, as previously discussed, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v.*, 497 F. App'x at 201; *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard].").

Plaintiff further argues that the ALJ "conceded" that Plaintiff had "moderate" limitations in her abilities to understand, remember, or apply information; concentrate, persist, or maintain pace; socialize with others; and adapt or manage herself. *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 32, p. 18. As a preliminary matter, the ALJ found that Plaintiff had only a "mild" limitation in her ability to interact with others. R. 14. Although it is true that the ALJ found moderate limitations in the three other areas of functioning, it is not apparent to the Court—and Plaintiff fails to explain—how this finding establishes that the ALJ erred in his consideration of Plaintiff's subjective complaints. *See Padgett*, 2018 WL 1399307, at *2.

For all these reasons, the Court concludes that the ALJ sufficiently explained his reasoning when assessing Plaintiff's subjective complaints, and that the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc.*

*Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id.*

### D.    RFC

Plaintiff also argues that substantial evidence does not support the ALJ's RFC determination. *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 32, pp. 19−21; *Plaintiff's Reply*, ECF No. 37, pp. 7−8. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 416.945(a)(1). At the administrative hearing stage, an ALJ is charged with determining the claimant's RFC. 20 C.F.R. §§ 416.927(e), 416.946(c); *see also Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, an ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to exclude from the RFC "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the

discretion to include a limitation that is not supported by any medical evidence if the ALJ finds

the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform work at all exertional

levels with certain nonexertional and environmental limitations, as follows:

> After careful consideration of the entire record, I find that the claimant has the
> residual functional capacity to perform a full range of work at all exertional
> levels but with the following nonexertional limitations: The claimant is restricted to jobs
> that are of a simple and repetitive nature. The claimant is restricted to jobs that are
> of a low stress nature, defined as jobs that have a predictable routine from day to
> day. The claimant is restricted to working in an environment without undue
> concentrations of dust, smoke, fumes or other pulmonary irritants, or of extremes
> of temperature.

R. 15. In making this determination, as previously noted, the ALJ detailed years of record

evidence, including, *inter alia*, no complaints of shortness of breath in office visits; respiratory

symptoms relieved with treatment; physical examinations that revealed that Plaintiff's lungs

were clear to auscultation and percussion with good respiratory effort and two notes reflecting

only mild wheezing; normal physical examinations with only one note showing 1+ right lower

extremity edema; no indication that Plaintiff's fatigue hindered her in any way; notations that

Plaintiff's COPD was stable on medication or improving; treatment notes that revealed that

Plaintiff had no hallucinations, no paranoia, and no thought process disorders; treatment notes

from 2016 and 2017 that noted that Plaintiff had only occasional panic episodes; Plaintiff's

denial of suicidal ideation and delusions, despite her hospitalization at several points for her

mental impairments around and after the application date; treatment notes that reflect that her

anxiety and depression were controlled with medication and, with one exception where she had

abused Xanax, she had good medication compliance; notations that, although Plaintiff's insight

and judgment were considered to be either fair, impaired, or poor, her memory and concentration

were good or fair; the absence in the record of any opinions regarding Plaintiff's exertional or

non-exertional limitations due to her physical and mental impairments. R. 15–18. The ALJ also relied on the opinions of reviewing state agency physician Dr. Castillo-Velez, previously detailed in this Opinion and Order, as well the opinion of another reviewing state agency physician, Dr. Rabelo. R. 20 ("In sum, the above residual functional capacity assessment is supported by the medical evidence of the record, and to a lesser extent by the opinions of Dr. Castillo-Velez and Dr. Rabelo. I have set the residual functional capacity accordingly."). The ALJ considered reviewing state agency Dr. Rabelo's opinion as follows:

> Dr. Rabelo, a doctor hired by the state agency, reviewed the record on September 18, 2014. He opined that the claimant could lift and carry up to 20 pounds occasionally and 10 pounds frequently, could stand and/or walk for a total of four hours in an eight-hour day, and could sit for a total of six hours in an eight-hour day. He also opined that the claimant could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, hut could never climb ladders, ropes or scaffolds. He cited to a "history of OSA" to support these limitations. He also opined that the claimant should avoid even moderate exposure to fames, odors, dust, gases, poor ventilation, etc. (exhibit 4A, p. 14-16).

> I give Dr. Rabelo's opinions some weight. Dr. Rabelo is a state agent who did not personally examine the claimant, hut rather based his opinion on the record as it existed in September of 2018. His exertional and non-exertional postural limitations are not supported by the record, which shows that the claimant had normal physical examinations. The record does not show that the claimant's OSA caused the claimant any exertional or non-exertional postural limitations. However, I concur with Dr. Rabelo's environmental limitations, especially in light of the claimant's COPD. For these reasons, I give Dr. Rabelo's opinions some weight.

R. 19. The record unquestionably contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff challenges this determination, arguing that the ALJ failed to consider the effect of her pulmonary impairments, including asthma, on her ability to sit, stand, walk, lift or carry. *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 32, p. 19. In support of this contention, Plaintiff contends that the "ALJ conceded that she an abnormal chest X-ray on March 20,

2015[,]" that she testified that her pulmonary impairments limited her ability to engage in exertion, including lifting and carrying, and that "[n]onexertional impairments *can* cause exertional limitations[.]" *Id*. (emphasis added). Plaintiff's arguments are not well taken. First, although the ALJ acknowledged that a chest x-ray taken on March 20, 2015, reflected mild central vascular prominence that may be due to lobe on respiratory expansion, *see* R. 609, the mere existence of this mild abnormality does not alone establish a functional limitation. *Cf. Foley v. Comm'r of Soc. Sec*., 349 F. App'x 805, 808 (3d Cir. 2009) (stating that "[a] diagnosis alone . . . does not demonstrate disability") (citations omitted); *Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Moreover, Plaintiff's speculation that she may have some unidentified exertional limitations due to her pulmonary impairments is based primarily on her own subjective complaints, which the ALJ discounted. R. 16, 19. As previously discussed, an ALJ need include only "credibly established" limitations, *i.e.*, limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554; *see also Grella*, 2014 WL 4437640, at *18 ("[T]he ALJ cannot accommodate limitations which do not exist, or which cannot be found in the medical record. No specific functional limitations were provided by any of Plaintiff's medical sources with respect to her carpal tunnel syndrome[.]") (internal citation and quotation marks omitted).

Plaintiff also appears to contend that her mental impairments impose additional limitations not included in the RFC, *i.e.*, being off-task for up to 15% of the workday and three or more absences from work. *Plaintiff's Reply*, ECF No. 37, pp. 8−9 (citing R. 76 (reflecting the vocational expert's testimony that being off-task for up to 15% of the workday would eliminate

all jobs in the national economy). However, the ALJ implicitly rejected such limitations when considering the record evidence, including medical records and medical opinions. R. 14–20. As previously discussed, The ALJ need include only "credibly established" limitations in the RFC. *See Rutherford*, 399 F.3d at 554. Absent any credible evidence that Plaintiff would be off-task 15% of the workday, "'it would be error to include limitations not credibly established by the record when relying on a vocational expert's testimony to make a disability determination.'" *Phelps v. Colvin*, No. CV 15-3146, 2017 WL 2290829, at *14 (D.N.J. May 25, 2017) (quoting *Chiucchi v. Comm'r of Soc. Sec.*, No. 15-2460, 2016 U.S. Dist. LEXIS 173259, at *25 n.4, 2016 WL 7322788 (D.N.J. Dec. 15, 2016)); *cf. Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (stating that a "hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence") (citation omitted); *Harris v. Comm'r of Soc. Sec.*, No. CV 17-3964, 2018 WL 5801546, at *3 (D.N.J. Nov. 5, 2018) ("While the vocational expert testified in response to a hypothetical posed by Plaintiff's counsel— that a person who is occasionally unable to respond appropriately to supervisors would indeed be unemployable—there is no evidence in the record to support Plaintiff's contention that there are times in the day that she would be wholly unable to interact with supervisors in an appropriate manner, or that Plaintiff would engage in frequent or occasional inappropriate conduct in dealing with them."). Accordingly, because the ALJ did not include this limitation in Plaintiff's RFC, the ALJ properly disregarded the vocational expert's testimony regarding being off-task 15% of the day.

Plaintiff also appears to argue that the RFC found by the ALJ does not adequately account for her limitations in maintaining concentration, persistence, or pace. *Plaintiff's Reply*, ECF No. 37, pp. 7–8 (citing to case law outside of this circuit). This Court disagrees. As Plaintiff

acknowledges, *see id.*, the ALJ limited Plaintiff to, *inter alia*, "jobs that are simple and repetitive in nature" and to "jobs that are of a low stress nature, defined as jobs that have a predictable routine from day to day." R. 15. The Court finds that these RFC limitations adequately accounted for Plaintiff's moderate limitations in maintaining concentration, persistence, or pace. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 210 (3d Cir. 2019) ("A limitation to 'simple tasks' is fundamentally the same as one 'to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions[.]'") (citations omitted); *see also Wood v. Barnhart*, No. CIV.05-0432, 2006 WL 2583097, at *11 (D. Del. Sept. 7, 2006) ("In restricting plaintiff to jobs with simple instructions, the court concludes that the A.L.J. adequately accounted for the moderate limitation in maintaining concentration, persistence or pace which was identified by both state agency physicians in their psychological evaluations of plaintiff and supported by plaintiff's medical records."); 20 C.F.R. § 416.968(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.").

For all these reasons, the Court concludes that the ALJ's RFC determination is consistent with the evidence and enjoys substantial support in the record.

### E.     Step Five

Finally, Plaintiff challenges the ALJ's step five determination, arguing that the hypothetical posed to the vocational expert, which included the ALJ's RFC determination, failed to include all of Plaintiff's limitations. *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 32, pp. 20–21; *Plaintiff's Reply*, ECF No. 37, pp. 8–9. Plaintiff's argument is not well taken.

"[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed

by the claimant's medical impairment(s) can meet the demands of the claimant's previous work[.]" 20 C.F.R. § 416.960(b)(2). "While 'the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554). "[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established limitations' in the hypothetical. *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014) (citing *Rutherford*, 399 F.3d at 554). Credibly established limitations are limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554. "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id.* (citations and internal quotation marks omitted). Finally, a "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations. *Podedworny*, 745 F.2d at 218.

Here, the ALJ's hypothetical posed to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 15, 75−76. The vocational expert responded that the jobs of ticket tagger, garment folder, and labeler would be appropriate for such an individual. R. 76. For the reasons discussed earlier in this decision, this hypothetical sufficiently captured Plaintiff's credibly established limitations and therefore supported the ALJ's determination at step five. *See Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218. To the extent that Plaintiff's criticism of the hypothetical posed to the vocational expert is that all

her alleged impairments were not addressed, this criticism boils down to an attack on the RFC determination itself, *see Rutherford*, 399 F.3d at 554 n.8, which this Court has already rejected for the reasons previously discussed.

In short, the Court finds that the Commissioner has carried his burden at step five of the sequential evaluation and concludes that substantial evidence supports his determination in this regard.

## V.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  April 14, 2021                                   *s/Norah McCann King*
                                                                  NORAH McCANN KING
                                                                  UNITED STATES MAGISTRATE JUDGE